UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEO MITCHELL                                          CIVIL ACTION

VERSUS                                                NO. 01-877

LA. LAW ENFORCEMENT                                   MAG. JUDGE WILKINSON
AGENCY ET AL.

## ORDER AND REASONS ON MOTION

Plaintiff, Leo Mitchell, is now a convicted killer who filed this case pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Louisiana State Trooper Omar Landrum.[1]  At the time he filed this civil action, plaintiff was a pretrial detainee, but he has since been convicted in state court of second degree murder, attempted second degree murder and second degree kidnapping.  In his complaint, Mitchell asserted two claims: (1) that Landrum used excessive force against him when Landrum arrested him on April 2, 2000 in connection with the incident that led to plaintiff being charged and convicted, and (2) that Mitchell was falsely arrested as to those charges.  All parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)).  Record Doc. No. 29.

---

[1]The other defendants, the La. Law Enforcement Agency and the La. State Police Department, were previously dismissed voluntarily.  Record Doc. Nos. 25, 26, 27.

The lengthy procedural history of this case has resulted in its pendency in this court for more than six years.  Mitchell filed his complaint in April 2001 while he was awaiting trial on a charge of first degree murder.  I continued the scheduled trial date in this civil action three times pending disposition of the serious criminal charge against him.  Record Doc. Nos. 35, 42, 55.

In April 2003, Mitchell conceded that <u>Heck v. Humphrey,</u> 512 U.S. 477 (1994), bars his false arrest claim until such time as he has been either exonerated or convicted of the charges pending against him, and that conviction has been expunged, invalidated or called into question by a federal court's issuance of a writ of habeas corpus.  Therefore, I dismissed his false arrest claim with prejudice to its being asserted again until the conditions of <u>Heck</u> are met.  Record Doc. No. 55.

On January 20, 2004, I appointed the Tulane Law Clinic to represent plaintiff  in this matter.  However, the clinic was allowed to withdraw three months later in light of irreconcilable conflicts between plaintiff's defense of his capital murder case in state court and preparation of the instant civil case for trial.  Record Doc. Nos. 61, 64.

Landrum filed an unopposed motion to stay this action.  The date for Mitchell's criminal trial in state court had been postponed repeatedly pending determination of his competency to stand trial.  I found that, because of the unresolved competency issue, Mitchell could not make a knowing and intelligent waiver of his Fifth Amendment right

against self-incrimination sufficient to prosecute his civil claim in this court without jeopardizing his defense in the pending first degree murder prosecution against him, and that his ability to prosecute the instant case was impaired by the pendency and status of the criminal proceeding against him. Accordingly, on May 12, 2004, I granted defendant's motion to stay and closed the case for all administrative and statistical purposes pending the outcome of plaintiff's criminal trial.  Record Doc. No. 67.

Almost three years later, Mitchell moved to reopen the case, representing in his motion that the criminal case against him had been finalized and he was prepared to proceed with the instant civil action.  The court granted the unopposed motion on March 22, 2007 and ordered defendant to file a motion for summary judgment based on qualified immunity no later than June 20, 2007, with plaintiff's opposition memorandum to be filed by July 3, 2007.  Record Doc. No. 70.

Landrum sought and received a motion for an extension of time to file his motion for summary judgment until July 10, 2007.  In the same order, the court extended plaintiff's deadline to respond to July 24, 2007.  Record Doc. No. 76.

Landrum timely filed his motion for summary judgment, supported by the certified transcript of plaintiff's state court criminal trial and an affidavit from another officer who had participated in Mitchell's arrest.  Record Doc. No. 83.  Landrum argues in his motion that both of plaintiff's claims should be dismissed with prejudice on the basis of qualified

3

immunity.  However, as noted above, plaintiff's false arrest claim was already dismissed with prejudice to its being asserted again until the conditions of Heck are met.  Mitchell has not asserted in this action that his conviction has been expunged, invalidated or called into question by a federal court's issuance of a writ of habeas corpus, as required by Heck to re-assert his false arrest claim in this court.  To the contrary, Mitchell recently filed a motion to stay the instant proceedings, in which he indicates that his criminal conviction is on direct appeal.  Record Doc. No. 89.  Therefore, the Heck conditions have not been met as to plaintiff's false arrest claim and the only claim before this court is his excessive force claim.

Mitchell sought and received a 60-day extension of time within which to respond to the summary judgment motion.  Record Doc. Nos. 85, 87.  He did not file an opposition memorandum.  Instead, he filed another motion for a 120-day extension of time, without giving any suitable explanation of why he needed still more time to respond, and a motion for a stay of these proceedings.  Both motions were denied. Record Doc. Nos. 88, 89, 90.  Accordingly, defendant's summary judgment motion is deemed to be unopposed.

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that defendant's motion for summary judgment is

GRANTED and that plaintiff's complaint is DISMISSED WITH PREJUDICE. Landrum is clearly entitled to qualified immunity, which bars plaintiff's claim against him.

I.      THE UNDISPUTED FACTS

The following facts are undisputed, solely for purposes of the pending motion for summary judgment. All of the undisputed facts are based on the unrebutted transcript of Mitchell's criminal trial in state court and the affidavit of Ronald Reed. Defendant's Motion for Summary Judgment, Record Doc. No. 83, Defendant's Exhs. 1, 2. Mitchell did not testify at his criminal trial.

Mitchell was tried and convicted on February 17, 2006 on one count each of second degree murder, attempted second degree murder and second degree kidnapping. The testimony revealed the following facts.

On April 2, 2000, around 7:00 a.m., Mitchell entered the residence of Evangeline Porter, her husband Henry Porter, her daughter Elena Smith, her two sons Howard Bardell and Thomas Porter, and her granddaughter Diedre Howard, at 333 Pollack Street in Kenner, Louisiana. Mitchell shot and killed Henry Porter, shot Bardell and kidnapped Smith, who had previously been his girlfriend, at gunpoint. Smith was wearing only a long white t-shirt and underpants.

Mitchell dragged Smith out of the house and through the woods surrounding the house towards Airline Highway. Smith saw him throw the gun into the woods near

5

Airline Highway, but she did not know if he had another weapon, so she continued to follow his orders because she was in fear for her life.  At a convenience store on Airline Highway, Mitchell convinced a cab driver to take him and Smith towards New Orleans.

At the same time, Landrum was employed by the State of Louisiana as a Trooper First Class and was working a special detail near the corner of Airline Highway and Hollandey Street in Kenner.  He was wearing his full Class A State Trooper uniform and had with him a fully marked and identifiable Louisiana State Police vehicle.

Around 7:00 a.m., several Kenner Police units sped past Landrum with their lights and sirens on.  Shortly thereafter, the officers drove slowly back towards Landrum without lights or sirens, which he interpreted as meaning that they were looking for someone.  One of the cars stopped and an officer informed Landrum that they were responding to a "be on the lookout" radio announcement concerning a double homicide suspect.  The officer told Landrum that the suspect was an African-American male, approximately 5'10" tall, who had just shot and killed two people and had kidnapped a young African-American woman, who was wearing a white shirt.

Shortly thereafter, Landrum saw a taxicab stopped at a red light in the eastbound lane of Airline Highway, near the sidewalk where he was standing.  He observed an African-American man, later identified as Mitchell, and a young African-American woman, later identified as Smith, who was wearing a white shirt, sitting in the middle of

6

the back seat.  The woman made eye contact with Landrum.  She never blinked, moved her head or took her eyes off Landrum and "just stared at" him with "somewhat of a dead look."  She continued to stare at him as the cab proceeded through the intersection.

When Landrum first observed Smith, he could see only Mitchell's jaw behind her jaw.  When Mitchell looked around Smith and made eye contact with Landrum, plaintiff immediately moved back and slouched down in the seat.

Believing that the two passengers fit the descriptions of the suspect and the kidnapping victim, Landrum got into his car, followed the taxicab and turned his lights on to tell the cab driver to stop.  The cab promptly pulled over and both rear doors opened, while the driver's door did not.  This "alerted" Landrum because, in his experience, passengers usually are not concerned with why a police officer stops a cab.

Smith immediately exited the cab from the rear door.  Landrum noticed that there were red spots, possibly blood, on her shirt, that she was not wearing any shoes and that her hair was messy.  He was not sure if she might have had shorts on under her long, white t-shirt, but he did not see any pants.  Smith's appearance, her expression in the cab and her quick exit from the vehicle increased Landrum's suspicion that she was the kidnap victim for whom police were searching.

Landrum stood between his vehicle and its open door, drew his weapon and commanded the cab's passengers to "get on the ground."  Smith complied immediately,

7

but Mitchell remained inside the cab.  Landrum continued to command Mitchell to get out of the car.  He could clearly see Mitchell slumping in the cab and looking over his shoulder through the back window.

Landrum ordered the suspect several times to leave the cab with his hands up and get on the ground.  Mitchell finally exited the cab and began to reach toward the ground. Landrum saw that Mitchell was wearing a large, untucked shirt.  As Mitchell repeated the words, "what you talking about," several times, he placed his left hand under his shirt where Landrum could not see it and made a quick, aggressive motion towards Landrum, as if he were going to pull something from under his shirt.  Because Landrum had been told that the suspect had shot two people and because he believed that this man was the suspect, he thought that Mitchell was reaching for a weapon.  He fired his weapon twice at Mitchell.

Mitchell then started running eastbound on Airline Highway.  Landrum got into his car, turned on his lights and pursued Mitchell.  When he saw Mitchell running along the train tracks, he paused to decide whether to drive along the tracks or continue along the street to the next corner and then turn in continued pursuit.  At that time, he heard a shot fired.  He began driving alongside the tracks, while radioing the State Police to explain the situation and give his location.

Landrum caught up with Mitchell and ordered him to get on the ground.  Mitchell jumped over a wooden fence and continued to flee.  After a series of turns, Landrum spotted Mitchell lying down next to a parked car.

Approaching slowly in his car, Landrum used his PA system to order Mitchell to come out from behind the car and get on the ground.  Mitchell got up and walked into the street.  Landrum stopped, exited his vehicle and drew his weapon, still issuing commands to get on the ground.  Mitchell reached under his shirt and made a charging motion towards Landrum, prompting the officer to fire at him two or three times.  Mitchell stumbled, but fled again.  Landrum pursued in his car.

Landrum saw Mitchell run along the side of a house near Williams Boulevard and Airline Highway.  After radioing his location to the State Police, Landrum exited his vehicle, began running towards Mitchell and ordered him several times to get on the ground.  Mitchell again put his hand under his shirt and made another aggressive move towards Landrum.  Landrum fired his weapon.  Mitchell climbed up on another fence and Landrum fired once more as Mitchell went over the fence.  Landrum ran around to the front of the house and found Mitchell lying on the ground.

Another State Trooper, Ronald Reed, arrived at that point and handcuffed Mitchell.  Landrum did not approach, touch or shoot Mitchell at any time after plaintiff was handcuffed.

9

Landrum never saw Mitchell produce or discard any weapon. He believed that Mitchell had a gun each time that plaintiff placed his hand underneath his shirt and made an aggressive motion towards the officer. During the pursuit, Landrum was in fear for his life because he believed that Mitchell had just committed two murders with a gun and still had the weapon.

II.   LEGAL STANDARDS FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) . The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find

for the nonmoving party based on the evidence presented.  <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of his claim.  <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 432 (5th Cir. 1998); <u>see</u> <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007) ("[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").  "'<u>We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts</u>.'"  <u>Badon v. R J R Nabisco Inc.</u>, 224 F.3d 382, 394 (5th Cir. 2000) (quoting <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  <u>National Ass'n of Gov't Employees</u>, 40 F.3d at 713 (quoting <u>Anderson</u>, 477 U.S. at 249).

11

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  <u>Little</u>, 37 F.3d at 1075 (quotation omitted).

III.   <u>ANALYSIS</u>

Landrum moved for summary judgment on Mitchell's excessive force claim based on qualified immunity.  Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Colston v. Barnhart</u>, 130 F.3d 96, 98 (5th Cir. 1997); <u>Coleman v. Houston Indep. Sch. Dist.</u>, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

> Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it.  On a motion for summary judgment, a plaintiff must produce evidence showing two things:  (1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable.

> The inquiry into reasonableness asks whether [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.  If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity.  Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.

12

Zarnow v. City of Wichita Falls, No. 06-10693, 2007 WL 2669821, at *4 (5th Cir. Sept. 13, 2007) (quotations omitted) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Malley v. Briggs, 475 U.S. 335, 341 (1986)) (additional citations omitted).

A.    Plaintiff Has Failed to Produce Any Evidence of a Constitutional Violation

A qualified immunity defense is analyzed under a two-step process.  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998); Colston, 130 F.3d at 99.  The first step is to determine whether plaintiff has alleged or, when responding to a summary judgment motion, produced evidence of, a violation of a clearly established constitutional right.  Zarnow, 2007 WL 2669821, at *4; Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325.

Mitchell has alleged a constitutional violation.  "[T]he use of excessive force to apprehend a subject implicates the Fourth Amendment's guarantee against unreasonable seizures."  Colston, 130 F.3d at 99 (citing Tennessee v. Garner, 471 U.S. 1, 7 (1985); Graham v. Connor, 490 U.S. 386, 388 (1989)).

However, in responding to Landrum's summary judgment motion, Mitchell cannot rest on the mere allegations of his pleadings, but must come forward with evidence to support the essential elements of his claim.  National Ass'n of Gov't Employees, 40 F.3d at 712 (citing Celotex, 477 U.S. at 321-23).  Despite receiving more than three months' notice that defendant would file a motion based on qualified immunity and having ample

13

time to respond, including a 60-day extension after the motion was filed, Mitchell has produced <u>no evidence</u> in support of the allegedly unconstitutional use of excessive force.

The Fourth Amendment provides a reasonableness standard concerning the use of force.  <u>Colston</u>, 130 F.3d at 99 (citing <u>Graham</u>, 490 U.S. at 395).  To succeed on such a claim, plaintiff bears the burden of proving that he suffered an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  <u>Freeman v. Gore</u>, 483 F.3d 404, 416 (5th Cir. 2007) (quotation and citations omitted).

The "reasonableness inquiry in an excessive force case is an objective one; evaluating the officer's conduct under the Fourth Amendment we must balance the amount of force used against the need for that force with reference to clearly established law at the time of the conduct in question."  <u>Colston</u>, 130 F.3d at 99 (citing <u>Graham</u>, 490 U.S. at 395-96).

The test for reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  <u>Graham</u>, 490 U.S. at 396.  The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer at the scene.  <u>Id.</u>  The

14

question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. <u>Id.</u> at 397.

In determining the reasonableness of Landrum's use of force, the court must not "employ 'the 20/20 vision of hindsight,'" and "must consider 'the fact that police officers are often forced to make split second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'" <u>Colston</u>, 130 F.3d at 99 (quoting <u>Graham</u>, 490 U.S. at 396-97).

The undisputed facts in the instant case show that Landrum knew that the Kenner Police were searching for a suspect matching Mitchell's description, who had reportedly shot and killed two people and who had kidnapped a woman matching Smith's description. Smith's appearance and conduct when Landrum saw her in the cab and as she exited the cab, as well as Mitchell's conduct both in and while exiting the cab, confirmed Landrum's suspicions that Smith was the kidnap victim and Mitchell was the suspect. A reasonable officer with the same knowledge that Landrum had at that time could interpret Mitchell's total disregard of Landrum's repeated orders to put his hands up and get down on the ground and plaintiff's multiple instances of reaching under his shirt where his hand could not be seen and making aggressive gestures toward the officer

15

as reaching for a concealed gun.  These actions, combined with plaintiff's attempts to flee, made Landrum's use of deadly force reasonable.

Therefore, plaintiff has not produced any genuine issue of material facts in dispute that the force used by Landrum was not excessive and that no constitutional violation occurred.

### B.     Defendant's Conduct Was Objectively Reasonable

The second step of the qualified immunity analysis requires the court to determine whether Landrum's conduct was objectively reasonable under existing clearly established law.  Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001); Jacobs, 228 F.3d at 393.

Officials who act reasonably but mistakenly are still entitled to the defense. Qualified immunity gives ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.  Anderson, 483 U.S. at 641; Malley, 475 U.S. at 341, 343; Hare, 135 F.3d at 325.

Based on the undisputed facts in the record, the court can determine as a matter of law whether Landrum is entitled to qualified immunity and, specifically, whether his conduct was objectively reasonable.  Scott, 127 S. Ct. at 1776 n.8; Atteberry v. Nocona Gen'l Hosp., 430 F.3d 245, 256 (5th Cir. 2005).

Because Mitchell has completely failed to produce any evidence that a constitutional violation occurred, Landrum is entitled to qualified immunity without

considering the second prong of the qualified immunity analysis.  <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 428-29 (5th Cir. 1994); <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 825 (5th Cir. 1993); <u>see also</u> <u>Scott</u>, 127 S. Ct. at 1774 ("In resolving questions of qualified immunity, courts are required to resolve a 'threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'"  If that question is answered in the negative, the court need not address qualified immunity.) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  However, even if plaintiff were able to establish a constitutional violation, the undisputed facts show that Landrum's conduct was objectively reasonable.

In the case of a fleeing suspect,

"if the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  Because deadly force may be used to stop some escapes, it also may be used to stifle a threat to the life of officers.  This is the case even where the decedent turns out to be unarmed but the officer reasonably feared for his own safety.

<u>Aujla v. Hinds County</u>, 61 Fed. Appx. 917, 2003 WL 1098839, at *3 (5th Cir. 2003) (quoting <u>Garner</u>, 471 U.S. at 11-12) (additional citation omitted).  The Supreme Court recently clarified that this language in <u>Garner</u> "did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force' .

17

. . [but] was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation."  <u>Scott</u>, 127 S. Ct. at 1769.

It is "clearly established" in the Fifth Circuit "that the use of deadly force is objectively unreasonable <u>unless</u> the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." <u>Duke v. Duckworth</u>, No. 06-60960, 2007 WL 1647911, at *2 (5th Cir. June 7, 2007) (emphasis added) (citation omitted).

The instant case is very similar to <u>Reese v. Anderson</u>, 926 F.2d 494 (5th Cir. 1991), in which the Fifth Circuit reversed the trial court and granted the defendant police officer's summary judgment motion based on qualified immunity.  In <u>Reese</u>, a robbery suspect was shot and killed by a police officer who, like Landrum, was responding to a radio call announcing a search for suspects.  The officer chased the suspects in their car for some time before the car came to a stop.  The officer drew his gun and repeatedly ordered the occupants of the car to raise their hands.  <u>Id.</u> at 500.  The decedent several times raised and lowered his hands below the officer's line of sight within the car, "in defiance of the officer's orders," and it appeared to the officer that the suspect was reaching for a gun.  Afraid that he was going to be shot before he had time to react if the suspect raised a gun, the officer shot the suspect.  <u>Id.</u> at 500-01. The court held that,

18

> [u]nder these circumstances, a reasonable officer could well fear for his
> safety and that of others nearby.  He could reasonably believe that [the
> suspect] had retrieved a gun and was about to shoot.  That is, an officer
> would have probable cause to believe that "the suspect pose[d] a threat of
> serious physical harm."  [The officer] had repeatedly warned [the suspect]
> to raise his hands and was now faced with a situation in which another
> warning could (it appeared at the time) cost the life of [the officer] or
> another officer.  Under such circumstances, an officer is justified in using
> deadly force to defend himself and others around him.

Id. at 501 (quoting Garner, 471 U.S. at 11).  It was irrelevant that the suspect was actually

unarmed because the officer "did not and could not have known this."  Id.  The officer

was entitled to qualified immunity because his use of force was not excessive or

objectively unreasonable in the light of clearly established law.  This holding applies

equally to the instant case.

Based on the undisputed facts, Landrum had probable cause to believe that

Mitchell posed a significant threat of death or serious physical injury to himself or others.

Moreover, a reasonable officer in his circumstances would have had probable cause to

believe that Mitchell posed a significant threat of death or serious physical injury to

himself or others.  Landrum was pursuing a fleeing murder and kidnapping suspect who,

based on the information that the officer knew, may have been armed.  This was a tense,

rapidly evolving situation.  Landrum responded as an objectively reasonable officer

would have when attempting to apprehend a man matching the suspect's description, at

a point in time and location where he reasonably could have anticipated coming into

contact with the suspect, after just having seen the kidnap victim trying to signal him from the cab and then exiting the cab with blood on her clothes.  Furthermore, Mitchell ignored Landrum's repeated commands to raise his hands get on the ground, and several times made gestures that a reasonable officer in those circumstances could interpret as an attempt to retrieve a weapon from under plaintiff's clothes.  In addition, plaintiff fled from the officer several times.  Therefore, Landrum is entitled to qualified immunity because his conduct was objectively reasonable under clearly established law at the time of the incident.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed with prejudice.  Judgment will be entered accordingly.

New Orleans, Louisiana, this ___1st___ day of October, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE